UNITED STATES DISTRICT COURT

| | |
|---|---|
| SANDRA JEANNE RANCOURT<br><br>*Plaintiff.*<br><br>vs<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.; TRANS UNION<br>LLC; EQUIFAX, INC.; EQUIFAX<br>INFORMATION SERVICES, LLC<br>*Defendants* | Case No. 1:18-cv-00042-JTN-ESC<br><br>TRIAL BY JURY DEMANDED |

## FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FCRA

### JURISDICTION

1. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C § 1331.

2. All conditions precedent to the bringing of this action have been performed.

### PARTIES

3. The Plaintiff in this lawsuit is Sandra Jeanne Rancourt, a natural person, who resides in Hillsdale County, Michigan.

4. Defendant Experian Information Solutions, Inc. (Experian) along with its subsidiaries, affiliates and partners operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* and maintains corporate offices at 475 Anton Blvd., Costa Mesa, CA 92626.

5. Experian, its subsidiaries and partners sell consumer information and data derived from consumer information in its consumer file(s) in a number of products and services to

customers such as the debt collection industry offering their "Collection Triggers"[1] service which operates on consumer data updated daily on an immense datatbase of over 220 million consumers known as "File One" as just one example and generates hundreds of millions of dollars in revenue annually. Experian gathers massive amounts of consumer information on a daily basis as stated on its web page[2] "Experian's U.S. ConsumerView marketing database covers over 300 million individuals and 126 million households. With the freshest data compiled from hundreds of public and proprietary sources, Experian has thousands of powerful data points to help marketers reach their targeting goals, including demographics, purchasing habits, lifestyles, interests and attitudes." Experian markets a product for businesses to target people for financial products using its financial data solutions stating "Experian's Financial and Wealth Audiences suite of solutions can help you accurately target consumers for financial services offerings using wealth indicator audiences, developed through our exclusive partnership with First Manhattan Consulting Group (FMCG Direct)." on that same web page.

6. Defendant Equifax, Inc. (Equifax) along with its subsidiaries *operates* as a Consumer Reporting Agency ("CRA") regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq*. with Equifax Inc. corporate offices at 1550 Peachtree Street, Atlanta, GA 30309.

7. Equifax, Inc. is the parent of Equifax Information Services, LLC (EIS). In prior litigation it has taken the position it is not itself a "consumer reporting agency" governed by the FCRA. See 15 U.S.C. § 1681a(f) ("The term "consumer reporting agency" means any person, who for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in

---

[1] http://www.experian.com/consumer-information/debt-collection.html (last visited 3-20-18)

[2] https://www.experian.com/marketing-services/targeting/data-driven-marketing.html (last visited 3-20-18)

part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.")

8. But of course, Equifax, Inc. *is* a consumer reporting agency. For purposes of the FCRA Equifax, Inc. has held itself out repeatedly to consumers, regulators and the public generally as the actual operating entity. Even the United States Congress recognizes Equifax, Inc. as a consumer reporting agency as evidenced by a recent letter to it from the Committee on Oversight and Government Reform. See Exhibit 1. The branding, labels and disclosures on the Defendants' consumer website is dominated by "Equifax, Inc." titling.[3] Defendants have held Equifax, Inc. out as the operating and responsible entity but argue in litigation that EIS is the consumer reporting agency, not Equifax, Inc. How a company factually operates is what matters under the FCRA, not how it says it operates.

9. Equifax, Inc. and its subsidiaries such as Equifax Information Services LLC (EIS) and Equifax Consumer Services, LLC (ECS) *operate* as alter egos of one another and freely transfer communications from consumers, as well as consumer information and data based on consumer information and communications, between those and numerous other "Equifax" entities for commercial purposes without restriction and to treat them as separate entities would promote fraud and sanction injustice.

10. Equifax, Inc. and its subsidiaries including EIS *operate* using the same "Equifax" logo with no differentiation between entities when interacting with consumers via mail and otherwise. By virtue of different subsidiaries and divisions operating without any impediments of

---

[3] https://www.equifax.com/personal/ (last visited 3-20-18)

corporate structure using the same logo as Equifax Inc. an unsophisticated consumer would not know one Equifax entity from another.

11. Equifax, Inc. has used EIS and ECS and other subsidiaries as dependent and integrated divisions rather than separate legal entities. The business operations are fully coordinated and shared resources are cross-applied without full and complete profit and cost centers. Management decisions at EIS and ECS as well as other divisions are made by and through Equifax, Inc. The entities largely hold themselves out as a single uniform business entity exchanging and selling consumer information as well as data derived from consumer information and communications it holds in its consumer files. Its customer base is vast including state and federal governments generating hundreds of millions if not billions of dollars in revenue annually.

12. The FCRA, through a rule mandated at § 1681x expressly prohibits "a consumer reporting agency from circumventing or evading treatment as a nationwide consumer reporting agency" by means of corporate organization or restructuring.

13. Equifax, Inc. and its subsidiaries – whether or not they observe state law corporate formalities – have eliminated nearly all lines between their different business entities in the collection, maintenance, sharing and furnishing of consumer reporting information. Equifax, Inc. entities such as EIS regularly share FCRA restricted information with sibling ECS to market and profit from the sale of identity theft products including the blurring of legal lines between providing file information under the FCRA versus private sale to the consumer. It does so with a number of Equifax related entities such as TALX Corporation, eThority, Anakam, Inc. not to mention Equifax Mortgage Services.

14. To remain separate and distinct for purposes of liability in this action, Defendants Equifax, Inc. and Equifax Information Services, LLC *must operate* as separate and legally as well as operationally distinct entities. Here for matters alleged and relevant herein, EIS is merely an alter ego of Equifax, Inc. For purposes of how consumer data was handled, warehoused, used and sold the corporate lines were disregarded in practice. EIS, ECS and other subsidiaries of Equifax, Inc. are mere instrumentalities for the transaction of the corporate consumer credit business. Equifax, Inc., EIS, ECS and other subsidiaries share full unity of interest such that the separate personalities of the corporation and subsidiaries no longer exist as they operate as one consumer reporting agency under the FCRA.

15. Defendant Trans Union, LLC (Trans Union) along with its subsidiaries and affiliates operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* with corporate offices at 555 W. Adams Street Chicago, IL 60661. Trans Union operates as a single FCRA governed consumer reporting agency. Trans Union, LLC has structured itself in order to warehouse its sale of credit reporting consumer reports in one entity and its sale of criminal history, employment, landlord-tenant purposed, etc. consumer reports in other entities. However, it freely transfers data between units and operates without any impediments of corporate structure[4]. In almost every material regard, the Trans Union units *operate* as if they are one and the same, a single consumer reporting agency.

---

[4] https://www.youtube.com/watch?v=yXZZI9jO27Q
https://www.youtube.com/watch?v=HR2oAl8N5XY&list=UU2KeLg4EXenj_9JcUAxKs_w&index=2&feature=plp
(last visited in 3-19-18)

## VENUE

16. The occurrences which give rise to this action occurred in Hillsdale County, Michigan and Plaintiff resides in Hillsdale County, Michigan.

17. Venue is proper in the Western District of Michigan.

## GENERAL ALLEGATIONS

18. Plaintiff wanted to obtain her **full file disclosure** as 15 U.S.C. § 1681g(a)(1) states she is entitled to.  Every consumer reporting agency shall, upon request and subject to § 1681h(a)(1) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.  25 U.S.C. § 1681g(a)(1) Plaintiff searched online but could find no place from Defendants where she could request her **full consumer file disclosure**.  Instead, Plaintiff only found where she could request a "credit report" which is NOT what she wanted or what § 1681g(a)(1) states she is entitled to upon requests as a consumer.  Plaintiff then decided to write to each of the Defendants directly and made a very deliberate and specific request to obtain her **full consumer file disclosure**, which she is entitled to under 15 U.S.C. § 1681g(a)(1), and not just a conventional credit report.

19. Plaintiff made a written request sent by certified mail for a copy of her **full consumer file disclosure** which was received by Experian on October 3, 2017.  See Exhibit 2 attached.

20. In response to her very specific request for her **full consumer file disclosure** Plaintiff received a **credit report** from Experian which was not responsive to her request.

21. Plaintiff made a written request sent by certified mail for a copy of her **full consumer file disclosure** which was received by Equifax on September 30, 2017.  See Exhibit 2 attached.

22. Plaintiff received no response at all from Equifax to her very specific request for her **full consumer file disclosure**.

23. Plaintiff made a written request sent by certified mail for a copy of her **full consumer file disclosure** which was received by Trans Union on October 8, 2017. See Exhibit 2 attached.

24. In response to her very specific request for her **full consumer file disclosure** Plaintiff received a reply from Trans Union which was not responsive to her request. Said reply indicated that proof of address was unacceptable. See Exhibit 3 attached.

25. Plaintiff, in making the exact same request of each of the Defendants, specified in great detail exactly what specific sections of the Fair Credit Reporting Act (FCRA) requires each Defendant to provide a **full consumer file disclosure** at least once every 12 months at no charge when a request is made by a consumer. See Exhibit 2 attached.

26. Plaintiff's request for a **full consumer file disclosure** from each Defendant was her first request for a **full consumer file disclosure** within 12 months and identification in the form of a legible copy of her social security card and current Michigan driver's license was attached to the request for identification and location purposes.

27. After receiving no response or responses from Defendants that complied with the requests made, Plaintiff made a second and final written request for a **full consumer file disclosure** pursuant to the FCRA of each Defendant. A copy of the initial letter was sent with the second request for clarification along with identification in the form of a legible copy of Plaintiff's social security card and current Michigan's driver's license for identification. See Exhibit 4 attached.

28. **At no time did Plaintiff make any request for a credit report/disclosure or credit file** from the Defendants but instead was very specific in requesting a **full consumer file**

28. **At no time did Plaintiff make any request for a credit report/disclosure or credit file** from the Defendants but instead was very specific in requesting a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1) as outlined in the initial request. [Exhibit 2]

29. In response to Plaintiff's second request for a **full consumer file disclosure** to Experian, Plaintiff received another credit report which was not responsive to her request as required by 15 U.S.C. § 1681g(a)(1).

30. In response to Plaintiff's second request for a **full consumer file disclosure** to Equifax, Plaintiff received a reply with the return address of Equifax Information Services, LLC. Said reply was not responsive to Plaintiff's request as required by 15 U.S.C. § 1681g(a)(1). Said reply stated that Plaintiff was not eligible for a free credit report but did offer Plaintiff a credit report for a standard charge of $11.50. Within said reply the following written statement did appear, "Several states have passed laws entitling the residents to receive free copies of their credit file in addition to the Annual Free copy which is requested through the Central Source as well as through *Equifax*." (emphasis added) See Exhibit 5 attached. The Plaintiff as the least sophisticated consumer had reasonable belief that the reply was from Equifax Inc. since she sent her requests for her **full consumer file disclosure** to the mailing address that she had seen in the past on an Equifax's website. No distinction of Equifax Information Services LLC was provided in said Equifax's website. It was simply, "Equifax."

31. In response to Plaintiff's second request for a **full consumer file disclosure** to Trans Union, Plaintiff received a reply which was not responsive to her request and not in compliance with 15 U.S.C. § 1681g(a)(1). See Exhibit 6 attached. Trans Union's reply claimed that Plaintiff's current address was not the one that Trans Union had on file. Shortly after Plaintiff received said reply, Plaintiff received a credit report from Trans Union.

32. All documents provided to Defendants in relation to identity and location information were in clearly legible form and in compliance with 15 U.S.C. § 1681h.

33. In each case with each Defendant, there was only communication in the form of letters requesting Plaintiff's **full consumer file disclosure** and response(s) by each Defendant with no other party involved in the communications between the parties other than the United States Postal Service (USPS) which transported documents between the parties.

34. Plaintiff was well aware of the recent hack of the Equifax database and had reason to believe that more information than she had ever received in a conventional credit report in the past had been stolen just from the massive publicity surrounding the hack and her study of the consumer protection statutes including the FCRA. Plaintiff had been studying the FCRA prior to the hack and already realized there was substantial information that companies like Equifax, Experian and Trans Union had in their file(s) about consumers than had been included in a conventional credit report she had received previously. Plaintiff had no direct knowledge of specific information regarding herself that might be in Defendants' file(s). That information, if it existed, could only be obtained through requesting a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1) rather than asking for a conventional credit report either online or directly from the Defendants.

35. Plaintiff did NOT request a credit report, credit disclosure, or anything else using the words "credit" or "report" in any manner from any Defendant at any time related to this lawsuit but instead made a request for her **full consumer file disclosure** and nothing else.

36. Upon information and belief by Plaintiff is that there is substantial information archived in Defendant's files relating to the Plaintiff that is provided to prospective creditors, insurers or employers who request information on Plaintiff that is not disclosed on a credit report.

37. Upon information and belief the information that is not disclosed to Plaintiff may contain negative codes or erroneous account information, among other things, that is provided to prospective creditors, insurers or employers which directly affect how that prospective creditor, insurer or employer would view the Plaintiff in terms of granting credit, rating insurance policies or providing employment or even providing housing.

38. This undisclosed information has never been provided to Plaintiff even when it was requested so she could examine it for accuracy and dispute it if necessary. It could be blatantly false or at the least misleading and without disclosure by the Defendants, Plaintiff would not have the opportunity to dispute the accuracy or veracity of the information in Defendants' files which she is legally entitled to do under the FCRA. Disclosure of false or misleading information to prospective creditors, insurers or employers that Plaintiff knows nothing about could paint her in a false light where she could be denied credit, housing, employment or pay higher interest rates on credit if it was granted and higher premiums for insurance harming her substantially.

39. In regard to this dispute before the Court, Plaintiff never made any request of Defendants that used the words "credit" or "report" in any manner or context but made a straightforward and very clear request **ONLY** for a **full consumer file disclosure** [Exhibits 2 and 4] to which she is entitled under 15 U.S.C. § 1681g(a)(1) and all Defendants failed to provide her **full consumer file disclosure** as required by the FCRA.

40. Plaintiff clearly is not making any claim regarding information that **HAS** been provided to a third party that she is aware of. The sole issue in this lawsuit revolves around the fact that Plaintiff has not had access to ALL information in her **full consumer file** that may have been at some time in the past provided to an unknown third party or **MIGHT** be

provided at some time in the future to a third party and she is entitled to have access to by law to review for accuracy.

41. Plaintiff made no requests for information such as credit scores, default dates, predictors or other ancillary information related to how the Defendants hold and/or manage the consumer information they have in their file(s) on individual consumers. The ONLY information requested by Plaintiff was a **full consumer file disclosure** of information *directly* related to her as a consumer that affects her credit worthiness, credit standing and credit capacity but also general reputation, personal characteristics, or mode of living among other things.

42. Because Plaintiff has not had access to that undisclosed information by Defendants, she has therefore had no opportunity to review it and dispute the accuracy of it, if it is false yet it is provided to potential creditors, housing providers, insurers and employers without her knowledge and purposely and illegally concealed from her.

43. Upon information and belief when a report is provided by the Defendants to a potential creditor, insurer or employer that information is provided in an encrypted format with instructions to the user that the consumer is NOT to be shown that information. There is no prohibition in the law that information obtained by a user can be provided to the consumer if a request for it is made by the consumer yet instructions from the Defendants are to the contrary. Why?

44. One can only surmise that there must be some nefarious reason why that information should not be provided to the consumer that is sent to the user in an encrypted format with instructions to the user to conceal it from the consumer. A reasonable assumption would be that it contains information that the consumer has never seen and the consumer reporting agencies don't want the consumer to see for some unknown reason. This is obviously not in

concert with the mandate of full disclosure clearly articulated in the FCRA in unambiguous plain language.

45. Plaintiff made multiple specific written requests of each of the Defendants for a **full consumer file disclosure** to which she is entitled as clearly stated in 15 U.S.C. § 1681g(a)(1) and all Defendants have failed to provide her **full consumer file disclosure** to Plaintiff and are therefore in violation of the FCRA.

46. The claims made in this lawsuit are in NO manner related to the data breach that occurred with Equifax. The claims herein are entirely focused on the very simple premise that all Defendants failed to provide a **full consumer file disclosure** of all information in their files to Plaintiff upon her multiple requests as required by 15 U.S.C. § 1681g(a)(1). There is no relation of any claims made herein to any issues with the Equifax data breach.

47. The actions of all Defendants occurred within the past 2 years and are within the Statute of Limitations under the FCRA.

### COUNT I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT EXPERIAN INFORMATION SOLUTIONS INC.

48. Paragraphs 1 through 47 are re-alleged as though fully set forth herein.

49. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

50. Experian operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

51. Experian repeatedly failed to comply with Plaintiff's multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Experian for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## COUNT II

### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT TRANS UNION LLC

52. Paragraphs 1 through 47 are re-alleged as though fully set forth herein.

53. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

54. Trans Union operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

55. Trans Union repeatedly failed to comply with Plaintiff's multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Trans Union for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## COUNT III

### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANTS EQUIFAX, INC. AND EQUIFAX INFORMATION SERVICES, LLC

56. Paragraphs 1 through 47 are re-alleged as though fully set forth herein.

57. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

58. Equifax and its alter ego Equifax Information Services, LLC operate as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

59. Equifax and Equifax Information Services, LLC repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Equifax, Inc. and Equifax Information Services, LLC for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated:  March 22, 2018                                  Respectfully Submitted,

*Sandra Jeanne Rancourt*
Sandra Jeanne Rancourt
9083 Dennings Road
Jonesville, Michigan 49250
520 609 3132
renucove@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2018, I served the foregoing document via 1st class United States Postal Service to the following;

Tamara E. Fraser
Attorney for Defendant Experian Informational Solutions, Inc.
380 N. Old Woodward Avenue, Suite 300
Birmingham, Michigan 48009

James L. Policchio, Esq.
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN 46077
Attorney for Trans Union

Jordan S. Bolton, CLARK HILL, PLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
Attorney for Equifax Inc.

March 22, 2018

*Sandra Jeanne Rancourt*
Sandra Jeanne Rancourt, Pro Se
9083 Dennings Road
Jonesville, Michigan 49250
520 609 3132