# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

**SANDRA JEANNE RANCOURT,**

    Plaintiff,

vs.

**EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; EQUIFAX, INC.; EQUIFAX INFORMATION SERVICES LLC,**

    Defendants.

Case No. 1:18-cv-00042-JTN-ESC

Judge Janet T. Neff

---

| | |
|---|---|
| Sandra Jeanne Rancourt<br>9083 Dennings Road<br>Jonesville, MI 49250<br>(502) 609-3132<br>*Plaintiff Pro Se* | KING & SPALDING LLP<br>Kendall W. Carter<br>1180 Peachtree Street NE<br>Atlanta, GA 30309<br>(404) 572-4600<br>Email:  kcarter@kslaw.com<br>*Attorneys for Equifax Inc.* |

# DEFENDANTS EQUIFAX INC.'S BRIEF IN SUPPORT OF
# MOTION TO DISMISS FIRST AMENDED COMPLAINT

## **TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................................1

**STANDARD OF REVIEW** ...................................................................................................1

**ARGUMENT**........................................................................................................................3

**CONCLUSION** ..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aioi Seiki, Inc. v. JIT Automation, Inc.*,
   11 F. Supp. 2d 950 (E.D. Mich., 1998) .................................................................................. 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 7

*People ex rel. Attorney General v. Mich. Bell Tel. Co.*,
   246 Mich. 198, 224 N.W. 438 (1929) ..................................................................................... 14

*Bassett v. National Collegiate Athletic Assoc.*,
   528 F.3d 426 (6th Cir. 2008) ..................................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 7

*Brown Bros. Equip. Co. v. State Hwy. Comm.*,
   51 Mich. App. 448, 215 N.W.2d 591 (1974) .......................................................................... 14

*Bruun v. Cook*,
   280 Mich. 484, 273 N.W. 774 (1937) ..................................................................................... 12

*Channing v. Equifax, Inc.*, .,
   No. 5:11-CV-293-FL, 2013 WL 593942 (E.D.N.C. Feb. 15, 2013) ....................... 10, 11, 12, 16

*Continental Identification Products, Inc. v. EnterMarket, Corp.*,
   2008 WL 51610 (W.D. Mich., Jan. 2, 2008) ............................................................................ 8

*Foodland Distrib. v. Al–Naimi*,
   220 Mich. App. 453, 559 N.W.2d 379 (1996) .................................................................. 14, 15

*Frihat v. Citimortgage, Inc.*,
   No. 07-CV-946, Doc. 60 (W.D. Mo. Dec. 1, 2009) (Attached hereto as Exhibit
   1) ....................................................................................................................................... 11, 16

*Gledhill v. Fisher & Co.*,
   272 Mich. 353, 262 N.W. 371 (1935) .......................................................................... 13, 14, 15

*Gottlieb v. Arrow Door Co.*,
   364 Mich. 450, 110 N.W.2d 767 (1961) ................................................................................. 14

*Greear v. Equifax, Inc.*,
   No. 13-11896, 2014 WL 1378777 (E.D. Mich. Apr. 8, 2014) ....................................10, 11, 16

*Klager v. Robert Meyer Co.*,
   415 Mich. 402, 329 N.W.2d 721 (1982)..........................................................................14, 15

*Kline v. Kline*,
   104 Mich. App. 700, 305 N.W.2d 297 (1981)........................................................................15

*Maki v. Copper Range Co.*,
   121 Mich. App. 518, 328 N.W.2d 430 (1982)........................................................................13

*McDonald v. Equifax, Inc. et al.*,
   Civil Action No. 3:15-cv-3212-B (N.D. Tex. Mar. 6, 2017) (Attached hereto
   as Exhibit 2) .....................................................................................................................11, 16

*In re NM Holdings Co., LLC*,
   622 F.3d 613 (6th Cir. 2000) ....................................................................................................7

*Persson v. Equifax Inc.*,
   No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002) (Attached hereto as
   Exhibit 3) ..........................................................................................................................11, 16

*Ransom v. Equifax Inc.*,
   No. 09-80280-CIV, 2010 WL 1258084 (S.D. Fla. Mar. 30, 2010) ...................................11, 16

*In re RCS Engineered Prod. Co., Inc.*,
   102 F.3d 223 (6th Cir. 1996) ..................................................................................................13

*Rymal v. Baergen*,
   262 Mich. App. 274, 686 N.W.2d 241 (2004)........................................................................14

*Seasword v. Hilti, Inc. (After Remand)*,
   449 Mich. 542, 537 N.W.2d 221 (1995).....................................................................12, 13, 14

*Slice v. Choicedata Consumer Servs., Inc.*,
   No. 3:04-CV-428, 2005 WL 2030690 (E.D. Tenn. Aug. 23, 2005).................................11, 16

*Soloman v. Western Hills Dev. Co. (After Remand)*,
   110 Mich. App. 257, 312 N.W.2d 428 (1981)........................................................................14

*Stringfield v. Graham*,
   212 F. App'x. 530 (6th Cir. 2007) ............................................................................................8

*Weiler v. Equifax Inc.*,
   No. 2:99-CV-936, Doc. 29 (W.D. Pa. Nov. 16, 2000) (Attached hereto as
   Exhibit 4) ..........................................................................................................................11, 16

*Wells v. Firestone Tire & Rubber Co.*,
    421 Mich. 641, 364 N.W.2d 670 (1985) ............................................................................. 12, 13

**Statutes**

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ........................................................... *passim*

15 U.S.C. § 1681a(d) .................................................................................................................... 8

15 U.S.C. § 1681a(f) ..................................................................................................................... 8

15 U.S.C. § 1681g ......................................................................................................................... 9

15 U.S.C. § 1681n ......................................................................................................................... 9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 6, 7, 16

Defendant, Equifax Inc., by counsel, files its Brief in Support of its Motion to Dismiss Plaintiff Sandra Jeanne Rancourt's First Amended Complaint for Violations of the FCRA ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and asks the Court to dismiss this action with prejudice in its entirety. For the reasons stated below, the motion should be granted.

## INTRODUCTION

This is a case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. *Pro se* Plaintiff Sandra Jeanne Rancourt filed her Complaint for Violations of the FCRA against Experian Information Solutions, Inc., Trans Union, LLC, and Equifax, Inc. (Doc. 1). Ms. Rancourt subsequently sought leave to amend her Complaint, (Doc. 22), the Court granted leave for her to file her FAC, (Doc. 25), and she filed her FAC, (Doc. 27).

Equifax Inc. moves this Court to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) as it is not a consumer reporting agency; thus, it cannot be liable under the FCRA. Equifax Information Services ("EIS") is a consumer reporting agency, and it is the party that responded to Ms. Rancourt's two written requests. Accordingly, Ms. Rancourt's FAC should be dismissed with prejudice.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions

1

therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss ... Determining whether a complaint states a plausible claim for relief

> will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits ... in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 F. App'x. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

## **ARGUMENT**

Equifax Inc. is not a consumer reporting agency. A "consumer reporting agency" or "CRA" is defined by the FCRA, 15 U.S.C. § 1681a(f) as:

> any person which, for monetary fees … regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

The term "consumer report" is defined by 15 U.S.C. § 1681a(d) as:

> The term "consumer report" means any written, oral, or other communication of any information by a *consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance … . (Emphasis added.)

Therefore, in order to be held liable under the FCRA, a defendant must be a "consumer reporting agency" that prepared a "consumer report" concerning the plaintiff.

Ms. Rancourt alleges that Equifax Inc. violated § 1681g of the FCRA. (Doc. 27 ¶ 59). Specifically, Ms. Rancourt alleges she made two written requests to Equifax Inc. for her "full consumer file disclosure." (*Id.* ¶¶ 21, 27). Both letters are addressed ambiguously to "Equifax" without further appellation. (Doc. 27-2 at 4; Doc. 27-4 at 5). Ms. Rancourt further alleges that in response to the first request received, no response at all . . . ." (Doc. 27 ¶ 22). In response to the second request, Ms. Rancourt alleges that she received a reply that she believed was from "Equifax

4

Inc." (*Id.* ¶ 30). The reply letter clearly states that it was sent by Equifax Information Services LLC:

> Please return this letter along with the requested information and your original correspondence/request to the address below.
>
> > Equifax Information Services LLC
> > PO BOX 105167
> > Atlanta. GA 30348-5167
>
> Thank you for the opportunity to assist you.
>
> Equifax Information Services LLC
>
> > Equifax Information Services LLC     November 22, 2017
> > PO Box 105167
> > Atlanta. GA 30348-5167

(Doc. 27-5 at 2-3).

Ms. Rancourt seeks statutory damages of $1,000, attorney's fees and costs pursuant to § 1681n of the FCRA. (*Id.* ¶ 59). She does not allege or seek any actual damages. (*Id.*).

In its Answer, Equifax Inc. affirmatively and repeatedly offers facts explaining that it is not a consumer reporting agency:

**FIRST DEFENSE**

> Equifax Inc. is not a proper party to this action. Equifax Inc. does not maintain a database of consumer credit information, does not handle consumer credit files or issue consumer credit reports, and does not investigate consumer disputes.

5

## **SECOND DEFENSE**

>  Equifax Inc. is not a consumer reporting agency as defined by the FCRA. Equifax Inc. does not maintain a database of consumer credit information, does not handle consumer credit files or issue consumer credit reports, and does not investigate consumer disputes.

(Doc. 12 at 12).

Equifax Inc. is not a consumer reporting agency; therefore, federal courts consistently dismiss Equifax Inc. in FCRA lawsuits filed by consumers based on allegations similar to those made by Ms. Rancourt here. Federal courts consistently have held that, based on the plain language of the FCRA, plaintiffs cannot maintain FCRA claims against Equifax Inc., and that Equifax Inc. may not be held liable under the FCRA for actions taken by its subsidiaries. *See e.g.*, *Greear v. Equifax, Inc.*, No. 13-11896, 2014 WL 1378777, at *1 (E.D. Mich. Apr. 8, 2014) (dismissing plaintiff's claims because "Defendant Equifax, Inc., is not a consumer reporting agency subject to the requirements of the FCRA. Plaintiff cannot, as a matter of law, state a claim against Equifax, Inc., under the FCRA."). The District Court for the Eastern District of North Carolina stated as follows:

> ("[P]laintiff has simply sued the wrong party; . . . [Equifax Inc.,] which is incorporated and headquartered in Georgia, is a holding company with no source of income other than what it obtains from its ownership interests in subsidiaries and affiliates. It has not been in the business of assembling or evaluating consumer credit information since 1977. Thus, insofar as plaintiff has alleged a claim against defendant for violating the FCRA, summary judgment for defendant is appropriate where it is not a CRA and not subject to the requirements of the FCRA.

*Channing v. Equifax, Inc.*, ., No. 5:11-CV-293-FL, 2013 WL 593942, at * 2 (E.D.N.C. Feb. 15, 2013) (citations omitted.)

In *Slice v. Choicedata Consumer Servs., Inc.*, No. 3:04-CV-428, 2005 WL 2030690, at *3 (E.D. Tenn. Aug. 23, 2005), after considering the plain language of the FCRA and the undisputed Certification of Equifax Inc.'s employee, the court held that Equifax Inc. was not a "consumer reporting agency." 2005 WL 2030690, *3. The court explained that in order for a plaintiff to state a claim under the FCRA, a defendant must fall into one of three groups: (1) a consumer reporting agency; (2) a user of consumer reports; or (3) a furnisher of information to consumer reporting agencies. *Id*. The court dismissed Equifax Inc. holding that a violation of the provisions of the FCRA "necessarily must be committed by a "consumer reporting agency." *Id.* The Court also held that Equifax Inc. did not violate the FCRA because it is not a consumer reporting agency. *Id.*

The *Greear*, *Channing*, and *Slice* decisions are three in an unbroken line of decisions from district courts dismissing Equifax Inc. under circumstances similar to those presented here. *See Ransom v. Equifax Inc.*, No. 09-80280-CIV, 2010 WL 1258084, *3 (S.D. Fla. Mar. 30, 2010) (dismissing Equifax Inc. because "[b]ased on this record, the Court concludes, as a matter of law, that Equifax, Inc. has not violated the FCRA because it is not a consumer reporting agency and has not prepared a consumer report for [plaintiff]."); *Frihat v. Citimortgage, Inc.*, No. 07-

7

CV-946, Doc. 60 at 4-5 (W.D. Mo. Dec. 1, 2009) (dismissing Equifax Inc. and citing cases for the proposition that "it [is] not a consumer reporting agency for purposes of the FCRA") (Attached hereto as Exhibit 1). *See also McDonald v. Equifax, Inc. et al.*, Civil Action No. 3:15-cv-3212-B (N.D. Tex. Mar. 6, 2017) (dismissing Equifax Inc.) (Attached hereto as Exhibit 2); *Persson v. Equifax Inc.*, No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002) (same) (Attached hereto as Exhibit 3); *Weiler v. Equifax Inc.*, No. 2:99-CV-936, Doc. 29 at 2-4 (W.D. Pa. Nov. 16, 2000) (same) (Attached hereto as Exhibit 4).

Despite the evidence that Ms. Rancourt provided as exhibits to the Complaint clearly indicating that the communications were sent from EIS, she nevertheless alleges with no support that Equifax Inc. and its subsidiaries, such as EIS and Equifax Consumer Services, LLC, "transfer communications from consumers, as well as consumer information and data based on consumer information and communications," (Doc. 27 ¶ 9), "Equifax Inc. entities such as EIS regularly share FCRA restricted information with sibling[s]," (*Id.* ¶ 13). Ms. Rancourt alleges that the Equifax entities have the same branding, labeling, and logo. (*Id.* ¶¶ 8, 10).

Ms. Rancourt concedes that Equifax Inc. is a parent holding company of EIS. (*Id.* ¶ 7). Thus, it appears that Ms. Rancourt is attempting to assert an argument that the corporate veil should be pierced. Such an argument should be rejected. "It is a general principle of corporate law deeply ingrained in our economic and legal

8

systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Channing*, 2013 WL 593942, at *3 (quoting *United States v. Bestfoods,* 524 U.S. 51, 61 (1998) (quotations omitted)).

A corporation—or other artificial entity—is a legal fiction. *Bruun v. Cook,* 280 Mich. 484, 495, 273 N.W. 774 (1937). It is " 'an artificial being, invisible, intangible, and existing only in contemplation of law.' " *Id.,* quoting *Dartmouth College Trustees v. Woodward,* 17 U.S. (4 Wheat.) 518, 636 (1819). "[A]bsent some abuse of corporate form," courts honor this fiction by indulging a presumption—often referred to as the corporate veil—that the entity is separate and distinct from its owner or owners. *See Seasword v. Hilti, Inc. (After Remand),* 449 Mich. 542, 547-48, 537 N.W.2d 221 (1995).

Michigan law respects the corporate form, and its courts recognize and enforce separate corporate entities. *See, e.g.*, *Wells v. Firestone Tire & Rubber Co.,* 421 Mich. 641, 650-51, 364 N.W.2d 670 (1985), and *Seasword v. Hilti, Inc. (After Remand),* 449 Mich. 542, 547, 537 N.W.2d 221 (1995) ("It is a well-recognized principle that separate corporate entities will be respected."). Piercing the veil of a corporate entity is an equitable remedy sparingly invoked to cure certain injustices that would otherwise go unredressed in situations "where the corporate entity has been used to avoid legal obligations...." *Wells*, 421 Mich. at 651, 364 N.W.2d 670. It

9

is therefore a remedy, and not a separate cause of action, something which the federal courts applying Michigan law have previously recognized. *See In re RCS Engineered Prod. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996), and *Aioi Seiki, Inc. v. JIT Automation, Inc.*, 11 F. Supp. 2d 950, 953-54 (E.D. Mich., 1998).

The Michigan Supreme Court established three elements for piercing the corporate veil of a subsidiary:

> Before the corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary, I believe it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable. The rule is correctly stated by Ballantine in an article on the separate entity of corporations in 60 American Law Review page 19, as follows: 'But to justify treating the sole stockholder or holding company as responsible it is not enough that the subsidiary is so organized and controlled as to make it 'merely an instrumentality, conduit or adjunct' of its stockholders. It must further appear that to recognize their separate entities would aid in the consummation of a wrong.'

*Gledhill v. Fisher & Co.*, 272 Mich. 353, 357–58, 262 N.W. 371, 372 (1935). Thus, the party requesting relief from recognition of the entity's separate existence must prove (1) control by the parent to such a degree that the subsidiary has become its mere instrumentality; (2) fraud or wrong by the parent through its subsidiary; and (3) unjust loss or injury to the claimant. *Maki v. Copper Range Co.,*

10

121 Mich. App. 518, 524-25, 328 N.W.2d 430 (1982), (citing *Gledhill,* 272 Mich. at 357-58, 262 N.W. 371).

Using the test stated in *Gledhill* as the foundation, when considering whether to disregard the separate existence of an artificial entity, a court must first examine the totality of the evidence surrounding the owner's use of an artificial entity and, in particular, the manner in which the entity was employed in the matter at issue. *Klager v. Robert Meyer Co.*, 415 Mich. 402, 411-12, 329 N.W.2d 721 (1982); *Rymal v. Baergen*, 262 Mich. App. 274, 294, 686 N.W.2d 241 (2004); *Brown Bros. Equip. Co. v. State Hwy. Comm.*, 51 Mich. App. 448, 452, 215 N.W.2d 591 (1974). From this evidence, the court must determine whether the evidence establishes that the owner operated the entity as his or her alter ego—that is, as a sham or mere agent or instrumentality of his or her will. *See Seasword,* 449 Mich. at 548, 537 N.W.2d 221; *Gottlieb v. Arrow Door Co.,* 364 Mich. 450, 452, 110 N.W.2d 767 (1961) (noting that there were no "proofs of fraud, sham, or other improper use of the corporate form" to justify disregarding the separate existence of the entity at issue); *People ex rel. Attorney General v. Mich. Bell Tel. Co.*, 246 Mich. 198, 204, 224 N.W. 438 (1929).

The court then must determine whether the manner of use effected a fraud or wrong on the plaintiff. *Gledhill,* 272 Mich. at 358, 262 N.W. 371. In considering this element, it is not necessary to prove that the owner caused the entity to directly harm

11

the plaintiff; it is sufficient that the owner exercised his or her control over the entity in such a manner as to wrong the plaintiff. *Id.; see also Foodland Distrib. v. Al–Naimi*, 220 Mich. App. 453, 459-60, 559 N.W.2d 379 (1996) (agreeing that there was evidence of fraud, but noting that courts may disregard the separate existence of an entity when the owner manipulated his or her ownership for his or her own purposes and interests to the prejudice of an innocent third party even in the absence of fraud); *Soloman v. Western Hills Dev. Co. (After Remand),* 110 Mich. App. 257, 264, 312 N.W.2d 428 (1981) ("Although it is clear that the corporate form may be disregarded to prevent injustice and to reach an equitable result, we believe that the injustice sought to be prevented must in some manner relate to a misuse of the corporate form short of fraud or illegality."). But it bears repeating that establishing an entity for the purpose of avoiding personal responsibility is not by itself a wrong that would warrant disregarding the entity's separate existence. *Gledhill,* 272 Mich. at 359-62, 262 N.W. 371.

Finally, the trial court must determine whether the wrong would cause the plaintiff to suffer an unjust loss. *Id.* at 359, 262 N.W. 371; *Foodland,* 220 Mich. App. at 460, 559 N.W.2d 379. If disregarding the separate existence would harm innocent third parties, it may be just to allocate the loss to the plaintiff, notwithstanding the wrong. *See Kline v. Kline*, 104 Mich. App. 700, 704, 305 N.W.2d 297 (1981). Similarly, a loss is not unjust if the plaintiff had full knowledge

12

of the circumstances surrounding the owner's use of the entity and agreed to proceed despite that knowledge. *Klager,* 415 Mich. at 415 n. 6, 329 N.W.2d 721 ("[A] plaintiff may not seek to disregard the corporate entity when he is fully aware of the character of the corporation with which he deals...."). If, considering the totality of the equities, the trial court would be consummating a wrong by honoring an entity's separate existence, the court may disregard the entity's separate existence. *Gledhill,* 272 Mich. at 358, 262 N.W. 371.

Ms. Rancourt's conclusory allegations are insufficient to plead her alter ego claim as compared to the elements listed above that are considered under Michigan law. *See Gledhill*, 272 Mich. at 358, 262 N.W. 371. Ms. Rancourt cannot save her claims against Equifax Inc. by creating a theory having no basis in reality. Ms. Rancourt's allegations are not well-pled and therefore, should not be afforded any weight. Accordingly, the Court should dismiss Ms. Rancourt's claims against Equifax Inc.

Dismissal is warranted here just as it was in *Greear*, *Channing*, *Slice*, *Ransom*, *Frihat*, *McDonald, Persson*, and *Weiler*. The issues are virtually identical. Equifax Inc. is not a consumer reporting agency and, therefore, is not subject to the FCRA and cannot be held liable under the FCRA. There is no reason for this Court to deviate from this strong and unbroken line of authority.

## **CONCLUSION**

Defendant Equifax Inc. respectfully request that this Honorable Court dismiss Ms. Rancourt's FAC pursuant to Rule 12(b)(6) against Equifax Inc. and for such other relief as the Court deems necessary.

Respectfully submitted this 12th day of April, 2018.

> */s/ Kendall W. Carter*
> Kendall W. Carter
> King & Spalding LLP
> 1180 Peachtree St. NE
> Atlanta, GA 30309
> Tel. (404) 572-4600
> Fax. (404) 572-5100
>
> Jordan S. Bolton
> CLARK HILL, PLC
> 500 Woodward Avenue, Suite 3500
> Detroit, MI 48226
> Tel. (313) 965-8300
> Fax (313) 965-8252
>
> David Centner
> CLARK HILL, PLC
> 200 Ottawa Avenue N.W., Suite 500
> Grand Rapids, MI  49503
> Tel. 616.608.1106
> Fax 616.608.1166
>
> *Attorneys for Equifax Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Sidney Lawrence Frank
Frank Haron Weiner & Navarro PLC
5435 Corporate Dr., Ste. 225
Troy, MI 48098

Tamara Elizabeth Fraser
Williams Williams Rattner & Plunkett PC
380 N Old Woodward Ave., Ste. 300
Birmingham, MI 48009

Sandra Davis Jansen
Scott E. Brady
Schuckit & Associates PC
4545 Northwestern Dr.
Zionsville, IN 46077

And via U.S. Mail to:
Sandra Jeanne Rancourt
9083 Dennings Road
Jonesville, MI 49250

>*/s/ Kendall W. Carter*
>Kendall W. Carter