**FILED - LN**
May 30, 2018 4:08 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: piw / ____ SCANNED BY: clw /31

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
(Southern Division (1))

| | | |
|---|---|---|
| SANDRA JEANNE RANCOURT | ) | |
| | ) | |
| Plaintiff | ) | Case No.: 1: 1-18-cv-00042-JTN-ESC |
| vs. | ) | |
| | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS INC., TRANS UNION | ) | |
| LLC; EQUIFAX, INC., EQUIFAX | ) | |
| INFORMATION SERVICES, LLC. | ) | |
| | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS

### Facts in Support of Plaintiff's Motion for Sanctions

#### I. Abusive Discovery Propounded Upon Plaintiff.

On May 1, 2018, all the parties to this case met before Magistrate Judge Ellen S. Carmody for a scheduling conference. From that conference, this Court issued a CASE MANAGEMENT ORDER, (Doc 41) on May 2, 2018, limiting the number of admissions to 10 per party and the interrogatories to 25 single-part questions.

Four days before said scheduling conference and *five days before* the issuance of the CASE MANAGEMENT ORDER, (on the day of April 26, 2018, to be exact) Defendant Trans Union, LLC mailed out to Plaintiff, all of Defendant's discovery requests which were and are obviously flagrant examples of abusive and oppressive discovery. (See Exhibit A) Propounded in that discovery are 40 requests for admissions, 20 abusive interrogatories that were multi-part (even though not specifically designated as such) and the production of private and sensitive documents that greatly exceeds information pertinent to Plaintiff's claim in this action. Plaintiff

spent much time doing the research in order to properly and reasonably respond to Defendant's abusive discovery requests. Plaintiff had planned that if in the event Plaintiff's reasonable responses did not satisfy Defendant, then Plaintiff would file a protective order for relief in responding to Defendant's abusive discovery.

As the result of Plaintiff using most of her time doing the work and research for properly responding to the abusive discovery, Plaintiff was unable to meet Trans Union's First Request for Production of Documents within the 30 days allowed to respond. The last day for Plaintiff to respond to Trans Union's discovery was May 26, 2018. Plaintiff contacted James L. Policchio, attorney for Trans Union, via email on May 22, 2018 to ask him if Trans Union would object to Plaintiff making a motion to the court for an extension of time for Plaintiff to respond to Trans Union LLC's First Requests for Production of Documents. Plaintiff did let Mr. Policchio know ***in that same email*** that she would be mailing her responses to Trans Union's requests for admissions and the interrogatories. Unbeknownst to Plaintiff then, (and known by Mr. Policchio at the time of said email communication) Mr. Policchio had already sent Plaintiff an amended set of requests for admissions, instructing her to disregard Trans Union, LLC's First Set of Requests for Admission to Plaintiff. Later that same day, Plaintiff received the amended requests for admission in the mail. Instead of the 40 requests for admission previously sought, Defendant's amended request for admissions has 10 requests. Mr. Policchio had waited late into the 30-day period for Plaintiff to answer Trans Union's abusive discovery requests before he sent the amended requests for admission. Mr. Policchio claims that Trans Union's amended requests for admissions keeps Defendant Trans Union within the CASE MANAGEMENT ORDER of 10 admissions per party.

Case 1:18-cv-00042-JTN-ESC   ECF No. 52 filed 05/30/18   PageID.457   Page 3 of 7

As the result of Defendant's voluminous and over-reaching discovery, Plaintiff has lost much valuable discovery time in preparing her own discovery to the Defendants is this case. Even more significant is that Defendant Trans Union has acquired far more interrogatories then what the court-ordered limit of 25 single-part interrogatories would have produced. Said ill-gotten interrogatories now may be used against Plaintiff and can prejudice her case.

Of the 20 requests for interrogatories, four have multiple parts such as "a, b, c...." and so on, bringing the actual number of interrogatories to 33. Of the interrogatories that appear to be single part by not being distinguished as "a, b. c..." or labeled as subsections, they do make multiple requests; having the same effect as multiple-part interrogatories. A number of the interrogatories are complex sentences that are difficult to decipher, (let alone answer properly) and are convoluted. In addition, the interrogatories are demands for the names and social security numbers of every person that may have assisted Plaintiff in the preparation of the interrogatory. Also demanded is the complete listing of Plaintiff's credit history and the name, telephone number ect. with every person or entity which Plaintiff had applied for credit with _**over the last 7 years**_. There are more examples of the abuses of interrogatories which can be read by this Court in Exhibit A.

In the requests for the production of documents, (See Exhibit A), is the request for the production of _**federal and state tax returns of Plaintiff for the last 7 years**_. This request by far is one of the most blatant and abusive demands for the production of documents by Defendant but many of the other requests for documents are also abusive.

## II. Trans Union Not Acting in Good Faith

What Plaintiff has described in this brief is only one example by which Defendant Trans Union has not acted in good faith with Plaintiff. Between the time of March 28 and April 4, 2018, Defendant Trans Union, through its attorney James L. Policchio, offered Plaintiff a Settlement Agreement by which Plaintiff had to agree to the accuracy of an "exhibit A" to the Settlement Agreement. Exhibit A was not provided with the Settlement Agreement but would be provided when Plaintiff agreed to the Settlement Agreement. When plaintiff questioned the issue of agreeing to the accuracy of an exhibit not provided with the Settlement Agreement, Defendant sent plaintiff a copy of her Trans Union consumer report, (identified as s "credit report" in said consumer report) which is what exhibit A was to be.[1] Plaintiff never expressly gave written permission for Trans Union, LLC or James L. Policchio to obtain credit information on Plaintiff. 15 U.S.C. § 1681b in pertinent part,

> "a) In general Subject to subsection (c), any consumer reporting agency may furnish a consumer report under the following circumstances and no other: (1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury. (2) In accordance with the written instructions of the consumer to whom it relates. (3) To a person which it has reason to believe— (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or (B) intends to use the information for employment purposes; or (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or (E) intends to use the information, as a potential investor or servicer, or current

---

[1] Plaintiff purposely did not make an exhibit to this motion of the emails in which the Settlement Agreement and exhibit A to the agreement were being discussed as those communications are marked as confidential and by filing them to the court, would have caused them to be public. Plaintiff will provide them privately to the Court if the Court requires them.

> insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or (F) otherwise has a legitimate business need for the information— (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

According to 15 U.S.C. § 1681q, it is a criminal offense to obtain information on a consumer under false pretenses. 15 U.S.C. §1681q reads as follows:

> "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, imprisoned for not more than 2 years, or both."

In addition to the evidences of Defendant operating under bad faith, Defendant has sent copies of its discovery requests to the attorneys of the other parties to this case, causing Plaintiff to believe that there may be more unethical practices by Defendant Trans Union. Defendant has also sent Plaintiff a threat of sanctions if good Plaintiff does not withdraw her lawsuit. At the time of the composition of this brief, Trans Union's motion for sanctions has not been filed.

### III. Objections of Plaintiff

Plaintiff objects to the abusive, dilatory discovery practices described above as it is over broad, voluminous, and extends far outside the four corners of Plaintiff's Complaint. It appears to the Plaintiff that unethical actions of James L. Policchio falls within a practice that is recognized by the courts as engaging in "Rambo-Lawyering." Plaintiff also objects to the underhanded and unethical way by which James L. Policchio obtained of Plaintiif's consumer report, (or credit report), The attorneys for Defendant Trans Union are bound by the Rules of Professional Conduct adopted by the Michigan Supreme Court, (L. Civ. R 83(j)) which most certainly has been violated by James L. Policchio, attorney for Trans Union. If Trans Union were to use Plaintiff's interrogatories and admissions obtained by its abusive discovery practices,

it would be fraud on the court. In *Kupferman v. Consolidated Research & Manufacturing Corp* 459 F.2d 1072 (2d Cir. 1972) the court stated that

> "[w]hile an attorney "should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court." And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court"

The safety of the people is the supreme law and it is within this Court's authority to control proceedings and to sanction or disqualify or punish an attorney in a particular case. L.Civ. R. 83 (q). The courts are universally acknowledged to be vested with the power to impose silence respect and decorum in their presence and submission to their lawful mandates. *Anderson v. Dunn, 19 U.S. 204 (1821)*.

> "the safety of the people is the supreme law," not only comports with, but is indispensable to, the exercise of those powers in their public functionaries, without which that safety cannot be guarded. On this principle it is, that Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and, as a corollary to this proposition, to preserve themselves and their officers from the approach and insults of pollution."

It is the inherent power of this court to levy sanctions in response to abusive litigation practices. 447 U.S. 752 (1980) *Roadway Express, Inc. v. Pipe et al.*

> "In *Link v. Wabash R. Co.*, 370 U. S. 626, 632 (1962), this Court recognized the "well-acknowledged" inherent power of a court to levy sanctions in response to abusive litigation practices."

It is the inherent power of the court to impose sanctions for bad-faith conduct., 501 US 32 Chambers v. Nasco, Inc. 1991.

> "We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of

In 28 U.S. Code § 1927 - Counsel's liability for excessive costs,

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

## Conclusion

Plaintiff has demonstrated in this brief, a pattern of acting in bad faith in this case on the part of Defendant Trans Union and its attorney James L. Policchio. Plaintiff respectfully makes this Motion for Sanctions against James L. Policchio and Trans Union in the form of the removal of Mr. Policchio from this case and in addition, the removal of all other attorneys that have made an appearance in this case in behalf of Trans Union. As part of the sanction, Plaintiff also request the issuance of a Protective Order barring Trans Union from using Plaintiff's responses to Defendant's requests for Admissions and Interrogatories. Plainitff also requests that the Court may impose any other sanctions that it sees fit.

Date, May 30, 2018

Respectfully submitted

*Sandra Jeanne Rancourt*
Sandra Jeanne Rancourt, Pro Se
9083 Dennings Road
Jonesville, Michigan 49250
520-609-3132
renucove@aol.com