UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
(Southern Division (1))

| | |
|---|---|
| SANDRA JEANNE RANCOURT )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>)<br>EXPERIAN INFORMATION )<br>SOLUTIONS INC., TRANS UNION )<br>LLC; EQUIFAX, INC., EQUIFAX )<br>INFORMATION SERVICES, LLC. )<br>) | Case No.: 1: 1-18-cv-00042-JTN-ESC |

**BRIEF IN SUPPORT OF PLAINTIFF'S REPLY TO
DEFENDANT TRANS UNION, LLC'S BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SANCTIONS [Doc. No. 51] AND MOTION FOR PROTECTIVE ORDER
[Doc. No. 53]**

Plaintiff hereby submits her **Brief in Support of Plaintiff's Reply** to **Defendant Trans Union, LLC's Brief in Opposition to Plaintiff's Motion for Sanctions [Doc. No. 51] and Motion for Protective Order [Doc. No. 53]** Plaintiff's Motion for Sanctions and Motion for Protective Order, [Doc. No. 51 and 53] should be granted because of the following:

### I.   STATEMENT OF THE CASE

Plaintiff's claim in her Complaint is that Defendant Trans Union, LLC did not provide all the information to Plaintiff that is recorded and retained in the "**file**"[1] that Defendant maintains on Plaintiff. In the year 2017, Plaintiff made two separate, specific requests [Doc. 1, Exhibits 2 and 4] via USPS certified mail for said "**file**"[2] pursuant to 15 U.S.C. § 1681g(a) in pertinent part,

---

[1] 15 U.S.C. § 1681a(g) The term "file" when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."
[2] Plaintiff referred to that "**file**" as her "**full consumer file disclosure**" in her requests to Defendant and in her Complaint.

> *"Information on file; sources; report recipients.* Every consumer reporting agency shall, upon request, and subject to 610(a)(1) [§ 1681h], clearly and accurately disclose to the consumer: (1) All information in the consumer's file of the requests except that—"

In response to Plaintiff's requests for her **file**, Defendant sent Plaintiff a type of consumer report called a "Trans Union Personal Credit Report" which complies with 15 U.S.C. § 1681c in that there *is* information excluded from said report. A **file** requested under 15 U.S.C. §1681g(a) is not under the exclusion of information requirement as is a Trans Union Personal Credit Report under 15 U.S.C. § 1681c. Plaintiff filed a Complaint against Trans Union for a violation of 15 U.S.C. § 1681g in January 11, 2018. [Doc. 1] and an Amended Complaint on 3/29/18. [Doc. 27]

## II. Relevant background

Discussions for settlement between Plaintiff and Defendant began on February 22, 2018, and from Defendant's counter-offer to Plaintiff on March 28, 2016, it became apparent to Plaintiff that said offer was prejudicial to Plaintiff. The terms and conditions of the SETTLEMENT AGREEMENT AND RELEASE, (the "Agreement") precluded to Plaintiff from any future right of action that Plaintiff may or may not have in regard to claims of inaccuracies of credit reporting on the part of Defendant.[3] Plaintiff never made any claims of inaccuracy of credit reporting in her Complaint.

In particular, it appeared to Plaintiff that she had to agree to the accuracy of an Exhibit A that Defendant referred to as a "consumer disclosure" without ever seeing the consumer disclosure first, else there would be no settlement.[4] Plaintiff pointed out the problems of the terms and conditions of the Agreement, including the issue of agreeing to something she had not

---

[3] Plaintiff did not attach a copy of the Agreement as it is confidential document but will provide the document upon request of this Court in camera.
[4] Document is confidential information that Plaintiff will provide in camera upon request of the Court

seen.[5] Little did Plaintiff realize that Defendant would use her critique of the Agreement as a green light for Defendant to acquire a Trans Union Consumer Credit Report without Plaintiff's written permission or a permissible purpose under 15 U.S.C § 1681b. The Trans Union Consumer Credit Report emailed by Defendant to Plaintiff on April 5, 2018 is nearly identical to the Trans Union Personal Credit Report that Plaintiff received from Defendant in November of 2017 instead of her **file** that she requested.[6]

Defendant attempted to convince Plaintiff in an email, that the past November 2017 Trans Union Personal Credit Report was the **full consumer file disclosure**, by calling it a "consumer disclosure"[7] and a "Disclosure." Plaintiff did respond via email that the Disclosure Defendant sent was confidential information which was acquired without her written permission.[8] Defendant did not reply to said response and from that point on, Defendant ceased any further communications with Plaintiff for settlement. On April 30, 2018 Plaintiff received notification via email that Defendant would be filing a Motion for Sanctions if Plaintiff did not withdraw her Complaint. (See Exhibit 1)

As this suit progressed, Defendant quickly propounded upon Plaintiff many abusive, harassing, overly broad and burdensome discovery requests. Basically, the discovery requests seek extensive, private and personal financial information and records of the Plaintiff relating to her income, employment and credit history for the last seven years; all of which are irrelevant to Plaintiff's claim in her Compliant <u>that she did not receive her **file**</u> from Defendant.

---

[5] Email is a confidential document that Plaintiff will provide in camera upon request of the court.
[6] The Trans Union Consumer Credit Report and the Trans Union Personal Credit Reports are confidential documents and therefore, not attached as an exhibit.
[7] The "consumer disclosure" is also referred to by Defendant in the emails as a "Disclosure"
[8] Email is a confidential document that Plaintiff will provide in camera upon request of the court.

Because the unethical way in which Defendant conducted itself in settlement negotiations, because of the illegal pull of Plaintiff's credit information and because of the blatantly abusive discovery propounded by Defendant, Plaintiff had no expectation that Defendant would act in good faith and that the matter needed to be dealt with through a motion for sanctions and a protective order. Plaintiff's best interests would best served by Plaintiff doing her research first and then presenting her issues in an orderly and concise way though her filings rather than making any oral arguments through a court scheduled teleconference as Defendant suggested. [Doc. 56, Exhibit 5, pgs. 1-2]

## II.  Arguments

### A.  Compliance with FRCP Rule 26(c)

Defendant argues that Plaintiff failed to comply with 26(c) claiming that she did not contact Trans Union to discuss its Discovery Requests prior to her filing the motions. Contrary to Defendant's claim, Plaintiff did contact Defendant explaining why she would not agree to a teleconference on this matter, pointing out that from the past dealings that she had with Trans Union of not acting in good faith, that her interests would be better served by filing a motion for sanctions and a protective order  Even though this was not specifically stated in Plaintiff's Certificate of Concurrence, Plaintiff did contact Defendant notifying her intentions of filing a motion for sanctions and explained her reason why. [Doc. 56, Exhibit 5, pgs. 1-2] Defendant has continued in making threats of sanctions against Plaintiff in its latest brief to this Court. [Doc. 56]

### B.  Abusive, Harassing, Over Reaching, Burdensome Discovery Requests.

Defendant is correct in pointing out that when its April 26, 2018 Discovery was served on Plaintiff, there were no parameters in regard to the number of admissions and interrogatories

agreed upon in the Joint Status Report. Nor were those parameters discussed at the Rule 16 Scheduling Conference conducted on May 1, 2018. When Defendant realized that the Court had set a limit of ten requests for admission and a limit of twenty-five single-part interrogatories with a Case Management Order. [Doc. 41] Defendant sent Plaintiff an amended set of requests for admission on May 16, 2018. (Doc. 56, Exhibit 1) Even so, Defendant never notified Plaintiff by email of the amended set of requests for admission; not even on May 22, 2018 when Plaintiff emailed Defendant of her intent to send Defendant the first set of requests for admission and interrogatories on that same day. When Plaintiff communicated with Defendant on May 22, 2018 via email, Plaintiff had not yet received the amended requests for admissions. Good faith on the part of the Defendant would have been to notify Plaintiff through email on May 16, 2018, (the day of the mailing of the amended requests for admission) that Defendant was withdrawing the first set of requests for admission and not to answer the first set. Instead, Defendant allowed Plaintiff to use up her time responding to the forty requests for admissions before she received the amended requests for admission.

Regarding the interrogatories, Defendant never amended those interrogatories which were sent out by Defendant before it was known that the Case Management Order put a twenty-five, single-part limit on the interrogatories. Consequently, those interrogatories have multiple parts bringing the total number of interrogatories to thirty-three. Although some parts of the interrogatories are not specifically marked as a, b, c, or numbered as subparts, there are a multiple number of subjects in some of the interrogatories which in effect, are subparts. In addition, the interrogatories are abusive and many of them, a template for claims of inaccuracies by consumers. Plaintiff never made a claim of inaccurate information in her Complaint. Defendant has garnered more information from the interrogatories than what might have been if

Defendant had also amended its first set of interrogatories with the court-ordered twenty-five, single-part interrogatories. Plaintiff believes that the interrogatories are potentially prejudicial to Plaintiff in her case and that they are in violation with the Case Management Order. [Doc. 41]

Defendant claims that its discovery requests are basic information regarding such issues as Plaintiff's contacts with Trans Union, creditors who may have obtained Plaintiff's consumer report from Trans Union. Defendant also claims that its discovery requests are nothing out of the ordinary for a FCRA case and falls within the broad scope of discovery permitted by Rule 26(b)(1). All that is simply not true.

The most glaring examples, including but not limited to, of those abusive and harassing requests by Defendant are the requests for documents[9] as follows: 1) All documents sent to and received from any creditors, debt collectors and entities with whom Plaintiff had applied to for credit for the last seven years. 3) Plaintiff's state and federal tax returns for the last ten years, 4) any documents reflecting any criminal history of any person or entity having knowledge of relevant facts or information. [Doc 52, Exhibit A] Of the interrogatories, examples of the abuses are, including but not limited to as follows: 1) The names and social security numbers of any person who assisted in the preparation of the interrogatories 2) Plaintiff work history for the last 10 years, complete with the names and addresses of each employer, each supervisor, each job title, salary or rate of pay reasons why each job was left. 3) A complete accounting of Plaintiff's credit history over the last seven years, including but not limited, date of credit transactions, terms of the credit, the amount of financing and so on. [Doc 52, Exhibit A] The few examples

---

[9] At this time, Plaintiff had not completed Defendant's request for documents.

provided above are obviously abusive for such a simple claim that Plaintiff did not receive her **file** from Defendant.

Defendant claims that Plaintiff's answers are boilerplate which is false. Plaintiff spent much time doing research in responding and answered each item individually. On the other hand, Defendant's discovery requests are templates for consumers who make claims of inaccuracies on consumer reports, which has needlessly wasted Plaintiff's time in answering.

### C. No Permissible Purpose for Plaintiff's Consumer Report.

Plaintiff did not provide written permission nor did the attorney for Defendant have a permissible purpose pursuant to 15 U.S.C. § 1681b to obtain Plaintiff's Trans Union Consumer Credit Report (See Exhibit 2). Nowhere in Defendant's brief is there any citation of law supporting Defendant's claim that a credit report can obtained during litigation without a court order.

### D. Plaintiff's Objection to Defendant's Untimely Filing

Plaintiff does object to Defendant's untimely filing of **Defendant Trans Union, LLC's Brief in Opposition to Plaintiff's Motion for Sanctions [Doc. No. 51] and Motion for Protective Order [Doc. No. 53]** Pursuant to L. Civ. Rule 7.3(c) Defendant had fourteen days to file its opposition to Plaintiff's non-dispositive motions. Plaintiff's motions were filed on May 30, 2018, [Doc. 51 and 53]. Defendant's opposition [Doc. 56] was filed on June 14, 2018 which is fifteen days after Plaintiff filed her non-dispositive motions. [Doc. 51 and 53]. The **Defendant Trans Union, LLC's Brief in Opposition to Plaintiff's Motion for Sanctions [Doc. No. 51] and Motion for Protective Order [Doc. No. 53]** should be stricken or not considered due to the fact that it is an untimely filing.

### E. Conclusion

As Plaintiff has clearly demonstrated above, the Defendant has not been acting in good with the way the attempted settlement was conducted through its attorney who has acted unethically and unprofessionally. Plaintiff's consumer report was furnished in violation of 15 U.S.C. § 1681b. When Plaintiff would not accept the prejudicial terms of the Agreement, a threat of sanctions was made against Plaintiff and sanctions have once again been threatened against Plaintiff with Defendant's last filing. [Doc 56] Defendant has propounded abusive and harassing discovery requests that has caused Plaintiff much distress and worry, to feel intimidated and as if she is a criminal because she dared to challenge Trans Union, LLC in court for not providing her with her **file** pursuant to 15 U.S.C. § 1681g. Plaintiff requests that this Court grant her requests for sanctions [Doc. 51] and motion for a protection order [Doc. 53].

Date, June 22, 2018

Respectfully submitted

*Sandra Jeanne Rancourt*
Sandra Jeanne Rancourt, Pro Se
9083 Dennings Road
Jonesville, Michigan 49250
520-609-3132
renucove@aol.com