Exhibit 1



**SCHUCKIT**
**& ASSOCIATES** p.c.

4545 Northwestern Drive | Zionsville, IN 46077
OFFICE 317.363.2400 | FAX 317.363.2257 | schuckitLAW.com

April 30, 2018

<u>**VIA U.S. MAIL AND E-MAIL**</u>
renucove@aol.com

Sandra Jeanne Rancourt
9083 Dennings Road
Jonesville, MI 49250

   RE: *Sandra Jeanne Rancourt v. Trans Union, LLC, et al.*
      U.S. District Court, Western District of Michigan
      Case No.: 1:18-cv-00042-JTN-ESC

Dear Ms. Rancourt:

Enclosed please find Trans Union's Motion For Rule 11 Sanctions (the "Motion") in the above-referenced matter. Pursuant to Federal Rule of Civil Procedure 11(c)(2), you have 21 days to withdraw your First Amended Complaint For Violations Of The FCRA (the "Complaint") against Trans Union. If you fail to do so, Trans Union will be permitted to file the Motion with the Court. For the reasons discussed below and in the attached Motion, your Complaint fails to state a claim against Trans Union upon which relief can be granted.[1]

As an initial matter, this lawsuit appears to be part of a disturbing new trend where <u>pro se</u> consumers have been using form request letters and litigation materials to manufacture frivolous claims against the consumer reporting agencies, based upon no actual harm or very *de minimis* injuries, in an effort to extort settlement. Similar trends have been recognized by other courts and have been taken into consideration when dismissing <u>pro se</u> complaints. See, e.g., Alston v. Experian Info. Sols., Inc., No. PJM 15-3558, 2016 U.S. Dist. LEXIS 117939, at *20-21 (D. Md. Aug. 31, 2016) (granting Trans Union's Motion To Dismiss and recognizing that "FCRA suits against credit reporting agencies have proliferated in recent years, many based at best on no real or very *de minimis* injuries in fact, but which have been filed essentially for the purpose of winning statutory damages or, what is more likely, in the hope of extracting settlements from defendants.").

Here, you allege that Trans Union failed to provide you with the information required by Section 1681g(a)(1) of the Fair Credit Reporting Act (the "FCRA") in response to your requests for your

---

[1] For the same reasons discussed in this letter and the attached Motion, your original Complaint was also frivolous and failed to state a claim against Trans Union upon which relief could be granted.

Sandra Rancourt

April 30, 2018

Page 2

"full consumer file disclosure."[2] See Complaint ¶ 39. You admit, however, that you received a credit report in response to your second request. See id. ¶ 31.

Courts have recognized that the term "credit report" is simply understood "to refer to a report like those prepared by the nationally recognized CRAs." See, e.g., Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 246 n.7 (3rd Cir. 2012); see also Seckinger v. Equifax Info. Servs., LLC, No. CV 415-304, 2018 U.S. Dist. LEXIS 50780, at *2 n.2 (S.D. Ga. Mar. 27, 2018) (interpreting the term "report" colloquially – "referring generally to the compilation of information related to a consumer's creditworthiness, whether provided directly to the consumer or to some third party."). Regardless of what the report is called, however, "when released to a consumer, the file is termed a 'consumer disclosure.'" See Seckinger, 2018 U.S. Dist. LEXIS 50780, at *15 (citing Spector v. Equifax Info. Servs., 338 F. Supp. 2d 378, 379 (D. Conn. 2004)).

It appears that your claim is based primarily on the fact that the consumer disclosure you received from Trans Union was not titled as a "full consumer file disclosure." See Complaint ¶¶ 18-32. However this is not a term defined by the FCRA. Actually, the phrase "full consumer file disclosure" does not appear anywhere within Section 1681g(a)(1), the specific provision of the FCRA on which you base your claim. Section 1681g(a)(1) simply requires Trans Union to provide you with "[a]ll information in [your] file at the time of the request." See 15 U.S.C. § 1681g(a)(1). The "Trans Union Personal Credit Report" that Trans Union sent in response to your request fully complies with Section 1681g(a)(1).

In any event, the only specific information you claim Trans Union withheld from you is archived information and "negative codes ... that [are] provided to prospective creditors, insurers or employers which [sic] directly affect how that prospective creditor, insurer or employer would view [you]."[3] See Complaint ¶¶ 36-37 and Exhibits 2 and 4. Contrary to these allegations, Section 1681g(a)(1) only requires Trans Union to disclose "information in the consumer's file at the time of the request" and expressly excludes "any information concerning credit scores or any other risk scores or predictors relating to the consumer." See 15 U.S.C. § 1681g(a)(1) (emphasis added).

---

[2] With regard to you first request, you claim that you made a written request to Trans Union for a copy of your Trans Union credit file, which was received by Trans Union on October 8, 2017, and that you received correspondence from Trans Union in response indicating that your proof of address documents were unacceptable. See Complaint ¶¶ 23-24 and Exhibits 2 and 3. The FCRA requires that Trans Union only provide a consumer disclosure upon proper proof of identification by the consumer, which you failed to provide with your initial request. See 15 U.S.C. § 1681h(a)(1) ("A consumer reporting agency shall require, as a condition of making the disclosures required under section 1681g of this title, that the consumer furnish proper identification.").

[3] Despite your attempt in the Complaint to obfuscate these claims by arguing that you were not requesting "information such as credit scores, default dates, predictors or other ancillary information," that is exactly what you claim Trans Union should have disclosed to you. See Complaint ¶ 37 ("negative codes ... that are provided to prospective creditors, insures or employers which directly impacts how that prospective creditor, insurer, or employer would view Plaintiff in terms of granting credit, rating insurance policies or providing employment or even housing.").

Sandra Rancourt

April 30, 2018
Page 3

Moreover, Section 1681c of the FCRA expressly prohibits a consumer reporting agency from including obsolete information in a consumer report.[4] See id. § 1681c(a).

Finally, your allegation that Trans Union transmits credit information to its subscribers in an encrypted format with the "nefarious reason" of concealing information from consumers is completely devoid of any factual support. See Complaint ¶¶ 43-44. In any event, the FCRA does not prohibit Trans Union from transmitting information to a subscriber in an encrypted format and Trans Union does so for the protection of its consumers. Moreover, federal regulations require financial institutions to adopt security measures for the "encryption of electronic customer information, including while in transit or in storage on networks or systems to which unauthorized individuals may have access." See, e.g., 12 C.F.R. part 30, Appx B(III)(C)(1)(c).

Under these circumstances, it is unfair for Trans Union to be forced to incur additional fees and expenses defending this case. As such, Trans Union requests that you immediately dismiss your Complaint against Trans Union, with prejudice. Failure to immediately do so will subject you to possible sanctions under not only Rule 11, but also other statutes, including the Federal Vexatious Litigation Statute, 28 U.S.C. § 1927 and the Fee-Shifting Provisions of the FCRA, 15 U.S.C. §§ 1681n(c) and 1681o(b), as well as the inherent powers of the Court.

If you have any questions or concerns regarding these issues, we encourage you to consult with a licensed attorney.

Very truly yours,

SCHUCKIT & ASSOCIATES, P.C.

James L. Policchio

JLP/
Enclosure

---

[4] Federal courts and the Federal Trade Commission ("FTC") – the federal agency formerly charged with enforcing and interpreting the FCRA – have limited the scope of the term "file" in Section 1681g to such information that would be disclosed in a consumer report to a third party. See, e.g., Gillespie v. Trans Union Corp., 482 F.3d 907, 910 (7th Cir. 2007) ("The language of § 1681g(a)(1), the FTC's interpretive guideline, and the Senate Committee Report all support Trans Union's argument that 'file' means information included in a consumer report."). Although interpretation and enforcement of the FCRA transferred from the FTC to Consumer Financial Protection Bureau ("CFPB") after passage of the Consumer Financial Protection Act of 2010, the CFPB has not issued any contrary interpretation.

Exhibit 2

a specific extension of credit directly or indirectly by the issuer of a credit card or similar device; or (C) any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made and such person makes the disclosures to the consumer required under section 1681m of this title.''

Subsec. (k). Pub. L. 104–208, § 2402(a), added subsec. (k).

Subsec. (l). Pub. L. 104–208, § 2402(b), added subsec. (l).

Subsec. (m). Pub. L. 104–208, § 2402(c), added subsec. (m).

Subsec. (n). Pub. L. 104–208, § 2402(d), added subsec. (n).

Subsec. (o). Pub. L. 104–208, § 2402(f), added subsec. (o).

Subsec. (p). Pub. L. 104–208, § 2402(g), added subsec. (p).

1992—Subsec. (j). Pub. L. 102–537 added subsec. (j).

#### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

#### EFFECTIVE DATE OF 2003 AMENDMENT

Amendment by Pub. L. 108–159 subject to joint regulations establishing effective dates as prescribed by Federal Reserve Board and Federal Trade Commission, except as otherwise provided, see section 3 of Pub. L. 108–159, set out as a note under section 1681 of this title.

Pub. L. 108–159, title IV, § 411(d), Dec. 4, 2003, 117 Stat. 2002, provided that: ''This section [amending this section and section 1681b of this title] shall take effect at the end of the 180-day period beginning on the date of enactment of this Act [Dec. 4, 2003], except that paragraph (2) of section 604(g) of the Fair Credit Reporting Act [15 U.S.C. 1681b(g)(2)] (as amended by subsection (a) of this section) shall take effect on the later of—

''(1) the end of the 90-day period beginning on the date on which the regulations required under paragraph (5)(B) of such section 604(g) are issued in final form; or

''(2) the date specified in the regulations referred to in paragraph (1).''

#### EFFECTIVE DATE OF 1998 AMENDMENT

Pub. L. 105–347, § 7, Nov. 2, 1998, 112 Stat. 3211, provided that: ''The amendments made by this Act [amending this section and sections 1681b, 1681c, 1681g, 1681i, 1681k, and 1681s of this title] shall be deemed to have the same effective date [see section 2420 of Pub. L. 104–208, set out as a note below] as the amendments made by section 2403 of the Consumer Credit Reporting Reform Act of 1996 (Public Law 104–208; 110 Stat. 3009–1257 [3009–430]) [amending section 1681b of this title].''

#### EFFECTIVE DATE OF 1996 AMENDMENT

Section 2420 of div. A of Pub. L. 104–208 provided that:

''(a) IN GENERAL.—Except as otherwise specifically provided in this chapter [chapter 1 (§§ 2401–2422) of subtitle D of title II of div. A of Pub. L. 104–208, see Short Title of 1996 Amendment note set out under section 1601 of this title], the amendments made by this chapter shall become effective 365 days after the date of enactment of this Act [Sept. 30, 1996].

''(b) EARLY COMPLIANCE.—Any person or other entity that is subject to the requirements of this chapter may, at its option, comply with any provision of this chapter before the date on which that provision becomes effective under this chapter, in which case, each of the corresponding provisions of this chapter shall be fully applicable to such person or entity.''

#### EFFECTIVE DATE OF 1992 AMENDMENT

Section 2(d) of Pub. L. 102–537 provided that: ''The amendments made by this section [enacting section 1681s–1 of this title and amending this section] shall take effect on January 1, 1993.''

#### CONSTRUCTION OF 1996 AMENDMENT

Section 2421 of div. A of Pub. L. 104–208 provided that: ''Nothing in this chapter [chapter 1 (§§ 2401–2422) of subtitle D of title II of div. A of Pub. L. 104–208, see Short Title of 1996 Amendment note set out under section 1601 of this title] or the amendments made by this chapter shall be considered to supersede or otherwise affect section 2721 of title 18, United States Code, with respect to motor vehicle records for surveys, marketing, or solicitations.''

### § 1681b. Permissible purposes of consumer reports

#### (a) In general

Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information—

(i) in connection with a business transaction that is initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

(G) executive departments and agencies in connection with the issuance of government-sponsored individually-billed travel charge cards.

(4) In response to a request by the head of a State or local child support enforcement agency (or a State or local government official authorized by the head of such an agency), if the person making the request certifies to the consumer reporting agency that—

(A) the consumer report is needed for the purpose of establishing an individual's ca-

pacity to make child support payments or determining the appropriate level of such payments;

(B) the paternity of the consumer for the child to which the obligation relates has been established or acknowledged by the consumer in accordance with State laws under which the obligation arises (if required by those laws);

(C) the person has provided at least 10 days' prior notice to the consumer whose report is requested, by certified or registered mail to the last known address of the consumer, that the report will be requested; and

(D) the consumer report will be kept confidential, will be used solely for a purpose described in subparagraph (A), and will not be used in connection with any other civil, administrative, or criminal proceeding, or for any other purpose.

(5) To an agency administering a State plan under section 654 of title 42 for use to set an initial or modified child support award.

(6) To the Federal Deposit Insurance Corporation or the National Credit Union Administration as part of its preparation for its appointment or as part of its exercise of powers, as conservator, receiver, or liquidating agent for an insured depository institution or insured credit union under the Federal Deposit Insurance Act [12 U.S.C. 1811 et seq.] or the Federal Credit Union Act [12 U.S.C. 1751 et seq.], or other applicable Federal or State law, or in connection with the resolution or liquidation of a failed or failing insured depository institution or insured credit union, as applicable.

**(b) Conditions for furnishing and using consumer reports for employment purposes**

**(1) Certification from user**

A consumer reporting agency may furnish a consumer report for employment purposes only if—

(A) the person who obtains such report from the agency certifies to the agency that—

(i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and

(ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and

(B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3)[1] of this title.

**(2) Disclosure to consumer**

**(A) In general**

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

**(B) Application by mail, telephone, computer, or other similar means**

If a consumer described in subparagraph (C) applies for employment by mail, telephone, computer, or other similar means, at any time before a consumer report is procured or caused to be procured in connection with that application—

(i) the person who procures the consumer report on the consumer for employment purposes shall provide to the consumer, by oral, written, or electronic means, notice that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under section 1681m(a)(3)[1] of this title; and

(ii) the consumer shall have consented, orally, in writing, or electronically to the procurement of the report by that person.

**(C) Scope**

Subparagraph (B) shall apply to a person procuring a consumer report on a consumer in connection with the consumer's application for employment only if—

(i) the consumer is applying for a position over which the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49, or a position subject to safety regulation by a State transportation agency; and

(ii) as of the time at which the person procures the report or causes the report to be procured the only interaction between the consumer and the person in connection with that employment application has been by mail, telephone, computer, or other similar means.

**(3) Conditions on use for adverse actions**

**(A) In general**

Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3)[1] of this title.

---

[1] See References in Text note below.